Franklin *v.* McCorkle.

## D. C. FRANKLIN *v.* S. S. McCORKLE.

1. SEDUCTION. *What is.* Seduction is the act of overcoming the chastity of a female by artifice, flattery or promises.

2. SAME. *Statute of limitations. Begins to run. When.* The offense is complete and a cause of action accrues and the statute of limitations becomes operative thereon with the first act of sexual intercourse.

3. SAME. *Measure of damages. Promise of marriage.* No promise of marriage is essential to the completion of the offense, but such promise may be proved in aggravation of damages.

4. SAME. *Parent and child. Loss of service.* At the common law, and the same rule prevails in Tennessee, a father may recover damages for the seduction of his minor daughter, without either proving or pleading the loss of her services.

### FROM GIBSON.

Appeal in error from the Circuit Court of Gibson county. JNO. T. CARTHEL, J.

HILL & WILLIAMSON and M. M. NEIL for Franklin.

W. C. KELLY and COOPER & HAYS for McCorkle.

39—VOL. 16.

Franklin *v.* McCorkle.

FREEMAN, J., delivered the opinion of the court.

This is a suit brought by the father for the seduction of his daughter, a minor of about eighteen years. The suit is not, in common law form, based on the idea of loss of service, which, however, by later authorities, was but a legal fiction, the real gravamen of the action being the seduction. The statute simply dispenses with this fiction and gives the parent the right to sue, "although such daughter be not living with nor in the service of the plaintiff, and though there be no loss of service." It is also provided, that a recovery in one suit by the father or mother, or daughter, shall be a bar to all other actions for the same cause. See Code (M. & V.), sec. 3501, *et seq.* This was intended to limit the recovery to one suit, the daughter or female, as well as father and mother, being authorized to sue by other provisions of the statute. It is seen from these provisions that the suit now before us is simply for the seduction of the daughter, and any allegation of loss of service unnecessary, unless it might be as a basis to aggravate or increase the damages resulting from the seduction, which is the substantive cause of complaint and basis of the recovery sought.

The case was not placed on the jury docket under the statute, but left by the pleadings to the decision of the circuit judge, who gave judgment for the plaintiff in the sum of $3,000, finding the facts and embodying them in the judgment on which his conclusion rests.

Franklin v. McCorkle.

The main question presented is on the plea of the statute of limitations of one year (M. & V. Code, sec. 3469), interposed by the defendant. The suit was commenced July 13, 1880, so that if "the cause of action has accrued," to use the language of our statute, twelve months before that period, or no cause of action has accrued within that period, the action is barred by section 3469, providing that "action for seduction shall be barred within one year after the *cause of action* accrued."

The facts as found by his Honor, the circuit judge, are, "that defendant seduced the plaintiff's daughter in March, 1879, having sexual intercourse with her by promising to marry her, and promising to shield her from disgrace. These facts, the court says, "he finds as a matter of law to be seduction." The court then finds, as a matter of fact, that defendant continued to have sexual intercourse with plaintiff's daughter two or three times a month, until the last of August or September, 1879; that on each of said occasions the defendant obtained consent by an implied, if not expressed, promise to marry and shield her from disgrace, and that each subsequent act of intercourse by defendant and plaintiff's daughter, as long as it was kept up, was substantially like the first. The first time defendant expressly promised to marry her, and by that means secured her consent; after that he impliedly promised to marry her, and by that means secured her consent, and as the intercourse was kept up to within twelve months before bringing suit, his Honor held the action not barred by the statute of limita-

tions. The question is, was this a correct view of the law?

The cause of action, both as given in the language of the statute, and by the declaration of plaintiff setting out the grounds of his suit, is the seduction of the daughter by the defendant, and in the declaration, we believe, in all the courts, giving the date of the wrong, it is stated to have occurred on August 25, 1879.

The language of the two sections of the statute is, Section 3501: "An unmarried female may prosecute an action for her own *seduction* and recover such damages as may be found in her favor." Section 3502: "A father, or in case of his death or desertion of his family, the mother, may bring a suit for the seduction of a daughter, although such daughter be not living with nor in the service of the plaintiff, and though there be no loss of service."

It is obvious, from this, that the seduction of the daughter is the cause of action, and so, as we have said, the declaration is based on this as the wrong complained of, and for which the recovery is sought. Whenever this act had been perpetrated and was complete, a cause of action had accrued to plaintiff, his daughter, or, if the father was dead or had deserted his family, then to the mother, and a right of recovery for such wrong is given, and accrues to the parties thus entitled to sue. Adding then the language of the statute of limitations, and the rule would be, that the cause of action accrues to the parties whenever the act of seduction is complete, and a right of recovery for

.Franklin *v.* McCorkle.

this wrong given, provided the parties to whom the right to sue is given shall bring suit within twelve months after said cause of action accrues, that is, after the wrong has been done by the seduction of the unmarried daughter. This is the plain meaning of the statutes cited, the language being so clear as not to admit of doubt or mistake.

What, then, is the force and meaning of the word seduction, and what does it involve; what act does it designate? Mr. Worcester, in his Dictionary, defines its legal meaning to be, "the offense of a man who induces a woman to surrender her chastity." This is strictly accurate, both philologically and according to the common and well understood meaning of the term. It is the despoiling a woman of her virginity. To-day she is a virgin, she yields to the seducer, and she is no longer a virgin, but has lost this womanly treasure, and is degraded by the act into the ranks of the despoiled, and unchaste, and no human power can restore her to what she was before the fatal error. It may also, by some of our cases, be, where the woman, after having been seduced, has again returned to and is walking in the path of virtue. But in both cases the act is complete when the chastity of the party is surrendered. It is also beyond question, that this result is effectually produced, and the act, if seduction, as complete by one act of sexual intercourse, though the amount of moral wrong and consequent depravity attending all sin and violation of the great fundamental laws of morality may not be the same in the case of the single act as where the party

persists in her evil course. His Honor, the circuit judge, in fact, has found that she was seduced in March, 1879, when the first act of criminal intercourse occurred. If this be correct, and it certainly is, then it follows, necessarily, that at that time a cause of action accrued to the party entitled to sue. In fact, no one can doubt, that if the father had sued the next day, the right of recovery would have been complete. The only element of difference, as between the case then and as now presented, would have been, that in the case of repeated outrage and wrong, at last terminating in the birth of a child, these additional elements would add to and swell the measure of damages, just as in the case of a trespasser upon land who remains in possession, and thus continues the wrong; he will be held to respond in damages for this continued extrusion of the party from his property, but the cause of action accrued when the original entry was made; or, in case of a trespass, by throwing down one's fence enclosing his growing crop, the cause of action accrues at the time of the original entry; the destruction of or injury done to the crop is a natural result of the original wrong, as the birth of the child is in this case, and so the recovery would be had for the original wrong, and, as resulting from that, the additional injury done to the crop.

The theory of his Honor is, that there was another act of seduction every time an act of sexual intercourse took place after the first one, and this on the notion that the daughter yielded each time by reason of an implied new promise to marry. But the finding on

this subject, and the facts, simply show and mean, that she yielded her virtue originally on such promise, and without this promise being withdrawn she continued to permit acts of sexual intercourse for the five or six succeeding months. This is all of it. There was no refusal at any time, nor any interposition of a new promise to marry, to induce compliance with subsequent requests for sexual gratification. In fact, we cannot fail to suspect, from what we see in this record, that the sexual desire was dominant in the girl herself, prompting to unlawful indulgence. She certainly does not show an aversion or any disposition to be sensitive on this point during the continuance of the illicit relation between the parties. This theory of his Honor is simply a forced assumption from the facts, and not at all necessary to a true statement of the actual transaction.

A conclusive answer to his Honor's theory, however, is found in the fact, that if true, it involves the proposition that for any act of sexual intercourse there accrued a cause of action, and so in this case there was matter for fifteen or twenty suits, or else it must be held the cause of action is not complete, does not accrue, so long as the criminal connection lasts, and so the seduction is not complete so long as a like act of criminal intercourse with the first was kept up. Neither view is sound, and so to hold would violate both the proprieties of our language, as well as the well understood meaning of the term seduction.

It is argued the case of *Thompson* v. *Clenden-*

*ing*, 1 Head, 288, sustains the theory of his Honor, but on looking to its facts we think the contrary is the principle there announced, precisely in accord with the theory of this opinion. The court below simply permitted evidence of sexual intercourse between the parties beyond the period of limitation, not to take the case out of the statute, but as tending to show the defendant was the father of the child, and also in aggravation of damages. This court, approving this ruling, said: "The whole of the defendant's intercourse with the person seduced and all the circumstances of the case are to be regarded as an entire transaction, and are admissible as evidence to the jury, as well in view of the question whether the defendant is the father of the child, as to show the extent of the injury in aggravation of damages": *Thompson* v. *Clendening*, 1 Head, 295, 296. This is all clearly correct, but does not tend to support the theory that a new cause of action accrued at each act of criminal intercourse, nor the other referred to, that it takes a series of acts of intercourse to complete the seduction of a female, or that the seduction is only complete when the parties cease to sin against the law of chastity and propriety.

Our feelings of aversion to the conduct of the defendant tend to make us very earnestly wish to see him compelled to respond in damages for the wrong he has done, but these feelings can not be allowed to control established principles of law. The Legislature has chosen to say, a party shall sue for the seduction of his daughter within twelve months after

Franklin *v.* McCorkle.

the cause of action accrues, and not within twelve months after the last act of fornication. We must hold the latter proposition to be the law to sustain this suit, but this would be to make, not enforce, the law. It is not so written.

The change made in our law by the section of the Code quoted amounts to this, that the old action, based on the fiction of loss of service, is now given in form for the seduction, as it always was in practice, and the statute of limitation prescribed for this action is one year instead of three, as formerly. Be this as it may, however, as we have said, this is an action in form and substance under the statute, the seduction being the cause of action, and that on August 25, 1879, and in perhaps two or more counts it stated as a fact that the daughter was under twenty-one years, lived with the father, and the birth of the child is charged, as is proper, by way of aggravation of damages. There is no averment of performance of, or loss of service. We are compelled to apply the statute or evade or disregard it, which we are not at liberty to do. In addition, we add, that our own cases, as well as the uniform consent of authorities, adopt the theory that all the attending circumstances, such as the length of time in which the criminal connection has been kept up, as in the *Clendening* case, 1 Head, 288, the birth of a child, the expenses of lying in, such as medical attention and the like, are to be looked to in aggravation of damages: See *Smith* v. *Yaryan,* S. Ind., 35, Amer. Rep., 324–5. This being so, it necessarily implies that these circumstances are not the

substantive cause of action, but only aggravating incidents and results of a pre-existent and complete cause of action on the part of the party entitled to sue. The cause of action is the seduction, the deflowering or debauching of a maiden, or seduction of an unmarried woman, then walking in the path of virtue, and leading her, by persuasion or false promises, into the pathway of vice. Whenever this is done, the cause of action accrues, and the suit must be brought within twelve months from the accrual of the cause of action by the imperative terms of the statute. There can, in the nature of things, be but one seduction under a single promise to marry, as in this case, though the act of sexual intercourse may be repeated. The seduction is complete, when, relying in that promise, the woman yields her person to the embrace of the deceiver; after this, it is but illicit cohabitation.

The fallacy that underlies the view of his Honor, the circuit judge, is, in confounding the right to sue for the seduction, with the breach of the contract to marry, by which the seduction was effected. Suppose the father or daughter had sued, after the first act of intercourse in March, for the seduction, and Franklin had plead in defense to that suit, that it was true he had promised to marry as charged, and by reason of such promise had obtained and continued to have sexual intercourse, but that he was then ready to marry as promised; would this have been any defense to the action? No one, we take it, would so maintain. But why? Simply because the fact of the con-

tinuance of the promise and intercourse and readiness to perform the promise, has nothing to do with the right to sue for the seduction. The father certainly could maintain the suit, even though the marriage was, in fact, afterward consummated, and if consummated after commencement of his suit, a plea setting up that fact, while it might go in mitigation of the damages, would be no defense whatever in bar of the action.

We think this conclusive of the case. We therefore hold his Honor erred in his view of the law, reverse his judgment and give judgment for the defendant on the plea of statute of limitations.

Judges COOKE and TURNEY dissent, and agree with the ruling of the court below.

### PETITION TO REHEAR.

Upon petition to rehear, FREEMAN, J., said:

A most earnest petition for a rehearing is presented in this case which deserves our respectful and careful attention. We have given the argument and authorities cited thoughtful examination, and proceed to state the result.

The case is an action by the father for the seduction of his daughter, but brought over twelve months after the first act of criminal intercouse and her actual seduction, in March, 1879, as found by his Honor, the circuit judge, who tried the case below, without a jury.

Franklin v. McCorkle.

The facts are, that defendant, Franklin, as found by the court below, had intercourse with plaintiff's daughter, under a promise of marriage, about March, 1879. This is her testimony, and is corroborated by her father's testimony, though the defendant as positively denies the promise as she asserts it, and insists that she was as willing as he was to have sexual intercourse, but feared the consequences, to-wit, pregnancy. He claims she yielded this objection on his telling her he could use an instrument for protection called a "cundrum," and that he went to a neighboring village, on this understanding, and procured this article, and then went to see her, and she asked if he had it, expressed herself as very glad of it, when told he had, and when he adjusted it she promptly engaged in the sexual act with him. In this he is corroborated to some extent by the girl's own statement, that he did promise to use this protective, did procure it, showed it to her, and told he would use it to prevent pregnancy, and this about the time, as she says, of the first act of intercourse. There is a good deal of proof in the record tending to show she was very imprudent, and not only permitted, but sought improper liberties with several other young gentlemen. For instance, she is shown to have gone, one night, with a witness, who is not attacked, to church, some three or four miles from home, in a wagon, and that she said to him, she wished they had a pallet so they might lie down in the wagon together; on his replying they would not have room, she said it would not take much room, as she would lie very close to him.

This witness says she leaned her person on him during the ride, and he placed his legs on her lap. In fact, she is shown to have been careless, if not loose, in her habit of permitting liberties with her person, and even to have invited them repeatedly before her seduction. Her father, the plaintiff, does not show the prudent care of the virtue of his daughter that should be exercised by a parent, as he is shown to have habitually permitted her to go alone at night, both on horseback and in a buggy, as well as in the case of the wagon ride to church, with young men, and return between ten and twelve o'clock, the churches being several miles from his house. All this does not make out a case in which very great feeling should be aroused, either in favor of the wanton girl, or her innocent, no doubt, but imprudent father, or call for such damages as a case involving the opposite elements would demand. These are stern, though unpleasant facts, clearly appearing in this record. The judgment against Franklin is $3,000.

But whatever the law is on this record, it is our duty to administer it.

The case turned in the former opinion on the question of the statute of limitations, whether the cause of action accrued over twelve months before the commencement of this suit, which was on July 13, 1880, after the birth of a child in May before. The fact of pregnancy had been observed some time before the child was born.

The suit is by the father, as we have said; is simply for the seduction of his daughter; averring in

some counts she was a minor, living at his house, and the birth of the child. The declaration in every count specifically avers the seduction to have taken place on August 25, 1879, which, as we shall see, was the last act of intercourse between the parties, he marrying, we believe, in October afterward. This being the time averred, the real question probably is, whether the fact is shown as charged, especially in view of the statute of limitation, the turning question in the case. The whole theory of the plaintiff's case on the only question of law before us is, that the seduction, though complete in March, 1879, was kept up, by continuous and repeated acts of intercourse, from then till August 25th, and was so either a continuous transaction or seduction, complete only after the last act of intercourse, or that each subsequent act of intercourse was an act of seduction, accomplished by means of either an expressed or implied renewed promise of marriage.

The theory of a continuous act from the first seduction down to the last act of sexual intercourse, is sought to be sustained by the following and the like from Addison on Torts, Wood's Ed., vol. 2, page 601. " Where an action is brought against a justice of the peace for a false and malicious imprisonment, every continuance of the imprisonment *de die in diem* is, in point of law, a new imprisonment, and therefore the time of limitation runs from the last day of such imprisonment, and not from the time of the issuance of the warrant." This principle or rule, as applicable to the facts of the case stated, a continuous act of

injury by imprisonment from day to day, there being in such a case no moment even in which the wrong is discontinued, is all very well, and may be sustained as sound for the additional reason that the party is restrained of his liberty, consequently not in condition to sue. The wrong, that is the imprisonment, is both in fact, and in the universal form of expressing it, but one wrong. But here we have no such act, either in its nature, or made out by the proof. On the contrary, the seduction, define this as you please, was complete on the first act of intercourse, and the acts constituting it can not be, by the very nature of the thing, continuous, as in the case of imprisonment. The definitions of the act as given in the former opinion were: "The offense of a man who induces a woman to surrender her chastity; and the other case, that of a woman who, after having been unchaste, has returned to the pathway of virtue, and is again seduced from that state by the wiles of a man, either by promise of marriage or otherwise." In this last case, however, as well said by the Supreme Court of Michigan, the interval between the seduction originally and the second seduction must be sufficiently long to indicate the reformation was real: *People* v. *Clark*, 33 Mich., 112.

These definitions are the fair result of the cases on the subject, and correspond in principle with the definition of Mr. Luld in his late work on Damages, page 558, which is: "Seduction is the act of overcoming the chastity of a female by flattery, promises or artifice." In every proper definition, chastity, as an established fact, either as an original or acquired

virtue after previous loss, is necessarily involved. In addition, it is clear beyond fair dispute, that one act of sexual intercourse in either case completes the fact of seduction. If not, what rule shall we adopt? Shall it be three, five or a dozen times? or shall it be held that every act of intercourse is a fresh seduction, until the parties shall separate? If the last theory be correct, then the woman might have a hundred causes of action after that number of acts of casual intercourse, or might leave one paramour, with whom she had been living in fornication for years, as the means of earning her maintainance, and at once go to the arms of another promising richer gifts, and yet be entitled to sue the former for her seduction, and recover, notwithstanding she had made no claim to virtue for years, and then sue the latter as well. None of these conclusions can be sustained by reason or authority. On the facts of this case, they are still further from being within the authority quoted. The daughter swears herself, that within the five or six months the acts of intercourse were not frequent, sometimes, she says, once a month, and sometimes not so often. We suspect it probable there may have been more than she says, but there is no proof of it. But taking it as she says, and so far from the acts being continuous, they were separate acts of intercourse, occurring with a month intervening between them. This bears no analogy whatever to the case of a continuous imprisonment from day to day, or any like case cited by counsel. To hold the rule cited applicable to this case, would be to hold a rule based on one state of

Franklin *v.* McCorkle.

facts equally applicable to another and different case, and thus confound all legal distinction, and abandon everything like logical precision in reasoning. The theory of a continuous series of acts from day to day has no support in fact, but has to be abandoned in order to support the other branch of the argument, of a fresh seduction by every act, as there must be a real reformation, evidenced by such interval of virtuous conduct as to show it to have been real. The other class of cases cited is, where the original act is not itself an injury or wrong, but becomes so in its after results, as where a man by digging on his own land wrongfully lays open the foundation of his neighbor's wall, and causes them to be gradually weakened by the effect of flowing water, rain and frost, so that at last the wall falls, the time of limitation runs from the time of the falling of the wall, and not the time of the original excavation: Addison on Torts, 600, 601. This is all clear, but evidently has no bearing on the question under discussion.

These are the only principles pressed on us by authority that tend to sustain the argument of counsel in favor of the views presented. We think they fail to meet the argument of the former opinion or shake its conclusions. The idea that this girl was seduced at every act of intercourse, in any proper or legal sense of that term, is preposterous, on the facts stated. She evidently eagerly accepted every opportunity of illicit pleasure. Her original virtue was evidently hung on the slender thread of fear of pregnancy as the result of indulgence. She yielded it as soon as

she learned of the means of prevention, and after having inspected the article supposed to guaranty her safety, she willingly trusted to its efficacy and wantonly yielded to the craving of passion. The idea of a woman thus engaged in sexual indulgence at every opportunity being seduced at every act of intercourse, is to our minds absurd, and to show its utter absurdity, we have from her own testimony the statement, that on the last occasion of such intercourse, about the last of August, 1879, she had sexual connection with defendant twice the same night by ten o'clock, once in going to church, and once on their return. Was she seduced twice that night, or did it take both acts of intercourse to complete it? It is inconceivable, it seems to us, that any one can assume that this woman comes within the second category of persons capable of being seduced, one who, after having been once seduced, has permanently returned to the path of virtue. There is no evidence that she ever had a virtuous impulse after the first act. In fact, as long as the "cundrum" was supposed to give her guaranty of safety, we have no doubt she unhesitatingly yielded to the promptings of wanton passion, wherever the opportunity offered itself, with the man who had this supposed safeguard.

The very question presented in this case, as to the time of seduction being complete, and effect of subsequent acts of intercourse, under a promise of marriage, as here, has been passed on by the Supreme Court of Indiana, in a carefully prepared opinion. In that case, which was an action for seduction which had originally

taken place in Illinois, continued there for sometime, in confidence, and relying upon a promise of marriage. They then came into the State of Indiana and there had repeated acts of sexual intercourse. The court held, first, that the cause of action was local, and arose in the State of Illinois. Second, that while there was a statute of Indiana that gave a woman the right to prosecute an action for her own seduction similar to our own, yet the subsequent acts of intercourse in Indiana did not sustain the right in this case. On this question the court said: "It is manifest, from the evidence in this case, that if the appellee was in fact seduced by the appellant, the seduction took place in the State of Illinois. The illicit intercourse testified to as having occurred in this State *did not* constitute a new and independent case of seduction, as contended for by appellee, but was merely consequential to the alleged seduction which had previously taken place." The acts in this case were much more continuous than in the case before us, and for a longer period, and, as we have said, under precisely the like promises as in the case now in hand. This is the decision of a most respectable court in a well considered case, and entitled to weight as authority. It is, as we think, so obviously based, in the nature of the case, as to need but little, if any, argument to sustain it.

The only legitimate effect of the promise of marriage shown in this case, is to show the artifice by which the defendant overcame the virtue of the daughter, and thus, in the language of Wilmot, C. J. (in *Tullidge*

v. *Wade*, 3 Wils. R., 18), "make the damages more liberal." It can have no possible influence on the question when the cause of action accrued, for she might equally have been seduced and a cause of action complete under our law without such promise, or any thing more than "solicitation and importunity," to which she yielded. The means, say this court, are indifferent. "It. is enough, that by any means or acts, he tempted or persuaded his victim to the surrender of her chastity": *Reed* v. *Williams*, 5 Sneed, 580. This being so, the promise of marriage, for all the purposes of the statute of limitations, may be left out of the case. The surrender of her chastity is, by our court, treated as the cause of action; the means by which this is induced immaterial, except, as we have said, in aggravation of damages.

We now cite the principles settled as to the statute of limitations from the same author referred to by counsel on this question, both in text and notes. Section 1361: "The time when the statute of limitations begins to run is from the accrual of the cause of action." "Whenever an injury is complete, a legal injury, however slight, the statute begins to run. By legal injury is meant such an injury as entitles a party to maintain an action, even though the damage is merely nominal; therefore, where the injury is such that a right of action accrues, the statute begins to run from that time": Note *a* to page 599. "The fact that the injurious consequences are not known, does not prevent the operation of the statute from the time when the injury was done and a cause of action ac-

crued": Note *a* to page 600, citing *Gastin* v. *Jefferson,* 15 Iowa, 185, and other cases.

The only real question "in this case is, could the present plaintiff, the father, have sued, and had a right of action accrued in March, when the court finds the daughter was seduced? If so, the statute has run, unless every subsequent act of intercourse, under an affirmation that he would still keep his promise to marry, must be held a new seduction, and consequently a new cause of action, and so twenty cases of action may have accrued in this case, which is absurd.

The case in American Decisions, vol. 44, cited (*Boyd* v. *Reid,* 740), only holds the father might recover at common law, regardless of the question of service. Our statute has also given this right, and so the action is brought, but the statute has also fixed the time of limitation for seduction at twelve months.

We have thus carefully gone over the points of the argument for rehearing. We can not allow our feelings of repugnance to the seducer to swerve us into bending the law to meet a hard case. The law must be run on straight lines, and while this may produce hardships, such hardships are incident to all human transactions, and are the necessary result of general rules, which in the main are based on a sound public policy and serve the public weal. The Legislature prescribes the rule as to the statute of limitations; we do not, but we are bound to enforce it in its plain, obvious meaning, and must not let our feelings induce us to such evasions, however desirable a different result might be in the particular case.